Opinion filed December 15, 2005












 
 
  
 
 







 
 
  
 
 




Opinion filed December 15, 2005

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00078-CV 

                                                    __________

 

                                      LILLIAN HUNTER, Appellant

 

                                                             V.

 

                                          FRED
HUNTER, Appellee

 



 

                                         On
Appeal from the 106th District Court

 

                                                        Dawson
County, Texas

 

                                          Trial
Court Cause No. 04-12-17094-CV

 



 

                                             M
E M O R A N D U M  O P I N I O N

This is an appeal from an order denying an
application for a protective order filed pursuant to Tex. Fam. Code Ann. '
82.002 - .009 (Vernon 2002 & Supp. 2005). 
The record before this court supports the trial court=s order, and we affirm.

In November of 2003, Lillian and Fred Hunter were
divorced.  Lillian filed the divorce
petition, and Fred did not appear in the trial court.  The default divorce decree provided that Fred
was permanently enjoined from communicating with Lillian, from physical contact
with Lillian, and from coming within 100 feet of Lillian=s
residence.








On December 7, 2004, Lillian filed an application
seeking both a protective order and a temporary ex parte protective order.  Lillian alleged that, on November 28, 2004,
Fred stated that he was going to shoot both her and their daughter, Rachel Ann
Hawkins.  Lillian also alleged that there
had been a history of family violence Aoff
and on over the past 5 or 6 years,@
ever since she lost her eyesight.

On December 7, 2004, the trial court issued an ex
parte protective order.  Tex. Fam. Code Ann. ' 83.001 (Vernon 2002).  A hearing was scheduled and then rescheduled
at least twice.

At the February 14, 2005, hearing, Lillian
testified that she was eighty-three years old, that she did not know how old
Fred was, and that she and Fred had been married for at least fifty years when
she filed for divorce.  Lillian also
testified that Fred made threats against her Aevery
time@ he came
to the house.  Lillian stated that, when
Fred was at the house in November of 2004, she did not talk to him.  Instead, their daughter Rachel had talked to
him.  Lillian stated that, in the past,
Fred had called her names, had threatened to burn the house down, and had hit
her.  Lillian testified that one time she
had heard Fred say that he was going to kill her.  Lillian did not testify as to the time frame
for Fred=s
actions.

Rachel testified that her father had recently come
to the house where she lived with her mother. 
Her father had wanted to pick up his mail and to get an old refrigerator
that was at the house.  Rachel stated
that she had never told her father to change his mailing address and that she
thought Amaybe he
might would have his mail changed@
on his own.  When she reminded her father
that he should not be at the house, Rachel said that Fred became upset and
started to call Lillian names.  Rachel
told Fred that, if the police came, they would take  him to jail.

Rachel first testified that her father became
angry and hit her in the face with his cane. 
On cross-examination, Rachel stated that she had pushed her father back
when he tried to enter the house.  Fred
fell, and his cane hit her in the face.

Rachel testified that her father had been angry in
November and had threatened to get his gun and shoot Lillian and her.  Rachel also stated that she had not seen her
father hit Lillian Alately@ and that it had been Ayears ago@
since he had hit her mother.








Lamesa Police Officer Christopher Harmon testified
that he was dispatched to Fred and Lillian=s
home in February of 2003.  When he
arrived, Officer Harmon found Fred sitting in a car outside the home and
Lillian inside the home.  Lillian told
Officer Harmon that Fred had threatened her. 
Fred told Officer Harmon that he never made Aany
threats with any kind of gun.@  Rachel told Officer Harmon that she did not
think her father owned a gun.  When
Officer Harmon found a Sears & Roebuck .22 caliber rifle, he took the gun
for safekeeping.  Officer Harmon
determined that Fred was eighty-four at the time.  Officer Harmon testified that the situation
was Asolved by
separation@ and that
no arrests were necessary.

Dawson County Deputy Sheriff James Davis testified
that, in April of 2004, he was employed as a Lamesa Police Officer and was
dispatched to the Adult Protection Services offices concerning a complaint
about an assault.  When he arrived,
Deputy Davis spoke with a caseworker and with Lillian.  Lillian told Deputy Davis that Fred had made
verbal threats toward her and had told her that Ahe
had a gun and he was going to be the death of her.@  Lillian also told Deputy Davis that, in the
past, Fred had hit her with a walking stick. 
Deputy Davis took Lillian to her sister=s
house and then went to talk to Fred. 
Fred was mowing the grass in the backyard when Deputy Davis found
him.  Fred told Deputy Davis that he
owned a Sears & Roebuck .22 caliber rifle. 
Deputy Davis took custody of the gun and placed it in the Lamesa Police
Department=s
evidence room.  There was no threat of
continuing violence, and Deputy Davis felt that Lillian and Fred just needed a Acooling off period.@

Fred testified that he and Lillian had been
married for fifty-two years when the default divorce decree was entered in
2003.  He was not aware of the divorce
until he heard about it after the fact. 
Fred testified that he lived at the house with Lillian until he moved
out in December of 2004, more than a year after the divorce was entered.  Since December, he had lived northeast of
town in a Abig new
building@ that was
not a nursing home.  Fred also testified
that he had owned a Sears & Roebuck .22 caliber rifle at one time and that
someone had stolen it.  

Fred stated that he recently had gone by the home
to get his mail and to find out if Lillian still had the Aicebox@
he had bought in 1951.  Rachel had told
him to leave.  Instead, he turned to go
inside the home.  Fred thought that
Rachel must have pushed him because he stumbled and Athrew
up [his] walking cane.@  Fred stated that he Afigured@ that was what had happened because, if
he Awould have hit [Rachel] with the cane,
she would have been hurt.@








Fred admitted that he had threatened to shoot
Lillian and Rachel Aa while
back.@  Fred also admitted that he knew he should not
threaten anyone with a gun.  Fred further
testified that he Asure@ would Anot
be going back@ to
Lillian=s home.

In open court, the trial court found that the ex
parte protective order had expired and that, therefore, the ex parte order had
not been violated when Fred visited the house the week before the hearing.  The trial court also found that Fred and
Lillian had continued to live together after the divorce and that the couple
had waived by agreement the permanent injunction in the divorce decree.  The trial court further found that family
violence was not likely to occur in the future and instructed Fred not to Ago near her house@ or Anear
anywhere you know that she is.@  The trial court advised Fred that, if he did
have a gun, he should give it to someone else. 
In the written order, the trial court denied the application for a
protective order.

In her first issue, Lillian argues that the trial
court=s finding
that family violence was not likely to occur in the future was against the
great weight and preponderance of the evidence. 
In order to determine if the evidence is factually sufficient, the
appellate court must review all of the evidence to determine whether the
challenged finding is so against the great weight of the evidence as to be
manifestly unjust.  Pool v. Ford Motor
Co., 715 S.W.2d 629 (Tex. 1986); Cain v. Bain, 709 S.W.2d 175 (Tex.
1986); In re King=s
Estate, 244 S.W.2d 660 (Tex. 1951); In the Interest of M.G.M., 163
S.W.3d 191 (Tex. App.CBeaumont
2005, no pet.); Peña v. Garza, 61 S.W.3d 529 (Tex. App.CSan Antonio 2001, no pet.).








The record reflects that both Lillian and Fred
were in their eighties.  Lillian was
visually impaired, and Fred used a cane. The couple had been married for more
than fifty years when Lillian obtained a divorce without Fred=s knowledge.  However, the couple continued to live
together for more than a year after the divorce.  Fred had moved out two months before the
hearing and had no intentions of living with Lillian again.  Fred was not able to provide the name of the
facility where he had lived since moving out of the house.  Lillian was not sure of Fred=s age. 
The record further reflects that Fred and Lillian=s
relationship had involved verbal conflicts and that at some time during the
marriage physical conflict might have occurred. 
There was no evidence concerning the specifics of any confrontations
between Lillian and Fred.  The law
enforcement officers testified as to events that happened twenty-four months
and eleven months prior to the hearing. 
Both officers stated that there was no need for further action on their
part once Lillian and Fred were separated from each other.  The finding that family violence was not
likely to occur in the future was not so against the great weight of the
evidence as to be manifestly unjust.  

We disagree with Lillian=s
contention that the fact that the 2003 default divorce decree contained a
permanent injunction prohibiting Fred from having contact with her conclusively
established that family violence was likely to occur after the 2005
hearing.  In fact, the record reflects
that Fred and Lillian continued to live together after the divorce and that the
specific instances of verbal conflicts since the divorce were between Fred and
Rachel.  The trial court correctly
determined that the terms of the injunction had been waived by agreement when
Lillian and Fred continued to live together for over a year after the
divorce.  The first issue is
overruled.  

In her second issue, Lillian argues that the trial
court abused its discretion by acting without regard for the laws of the State
of Texas and by imposing a remedy of its own creation. Lillian bases her
argument on her contention that the evidence did not support the trial court=s finding that family violence was not
likely to occur in the future.  Lillian
argues that the evidence established a clear pattern of ongoing family violence
and that, therefore, the trial court created its own remedy when it denied the
protective order and admonished Fred about his future behavior.  We disagree.

The trial court denied the application after
concluding that family violence was not likely to occur in the future. Tex. Fam. Code Ann. '' 81.001 & 85.001 (Vernon
2002).  As stated above, we find that the
evidence supported that conclusion.  Fred=s counsel asked the trial court to Aexplain to this man in very clear
English what [the trial court] expects of him.@  Lillian made no objection.  The trial court then admonished Fred to have
no contact with Lillian and advised him to not have a gun.  The trial court asked Fred if he could hear
and if he understood what the trial court was saying.  The trial court concluded with the following:

THE COURT: You got those three things?  Stay away from the house, stay away from Ms.
Hunter, and, if you have any kind of a gun, you give it away to someone, but
you get your lawyer to help you with that. 
Do you understand?

 

[FRED]: Yes, Ma=am.

 

THE COURT: Am I clear?

 

[FRED]: You=re
clear.








THE COURT: Now, Mr. Hunter, let me tell you something.  If you don=t
do what I=ve told
you to do and you come back here in this court, I probably will be one mad
woman.

 

[FRED]: Okay.

 

THE COURT: You got that?

 

[FRED]: Yes, ma=am.

 

THE COURT: Okay.

 

[FRED]: Can I say one word?

 

[FRED=S
ATTORNEY]: No.  Let=s go.

 

[FRED]: Okay.

 

THE COURT: We=re
adjourned.

 

The record does not support Lillian=s
argument that the trial court abused its discretion by failing to follow
statutory provisions or by creating its own remedies.  The second issue is overruled.

The order of the trial court
is affirmed.   

 

PER CURIAM

 

December 15, 2005

Not designated for publication.  See Tex.
R. App. P. 47.2(a).

Panel consists of: Wright, C.J., and

McCall, J., and McCloud, S.J.[1]











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.